**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SYLVIA STEWARD o.b.o. J.Q.W.,**

      **Plaintiff,**

**-vs-**                                                                                                    **Case No. 6:05-cv-243-Orl-22DAB**

**JO ANNE B. BARNHART, Commissioner**
**of Social Security,**

      **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

On behalf of her cousin, Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED**.

### *I. BACKGROUND*

**A.      Procedural History**

On July 31, 2002, Plaintiff Sylvia Steward protectively filed an application for childhood Supplemental Security Income (SSI) filed for the minor child, J.Q.W. (the "Child"). R. 52-54.

Plaintiff, the Child's maternal cousin and guardian[1], alleges that the Child has been disabled since January 21, 1994 due to post-traumatic stress disorder and mood disorder[2]. R. 52. Plaintiff's claim was denied initially and upon reconsideration. R. 36-41. Plaintiff timely requested a hearing before Administrative Law Judge, Franklin D. Holder (hereinafter referred to as "ALJ") which was held on July 27, 2004. R. 352-69. In a decision issued October 13, 2004, the ALJ found the Child not disabled as defined under the Act. R. 12-24. Plaintiff filed a Request for Review of Hearing Decision/Order, which the Appeals Council denied on December 29, 2004. R. 6-8. Plaintiff filed this action for judicial review on February 17, 2005. Doc. No. 1.

### B.     Medical History and Findings Summary

The Child's medical history is set forth in detail in the ALJ's decision. By way of summary, the Child was treated for post traumatic stress disorder, mood disorder, and reactive attachment disorder. R. 25, 28, 252. After reviewing the Child's medical records and the testimony of the Child and her cousin (Plaintiff), the ALJ found that the Child never engaged in substantial gainful activity. R. 23, Finding 2. The Child suffered from post traumatic stress disorder and mood disorder, "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 23, Finding 4. The ALJ further found that the Child's subjective complaints were credible only to the extent that were supported by the evidence of record as summarized in the text of the decision. R. 23, Finding 6. The ALJ found

---

[1] *See* R. 48, 303-08, 312.

[2] Although the Child was born to a thirteen-year old mother and lived with her and other relatives, apparently on and off for some time, based on the medical reports before the ALJ, the Child was healthy until a suspected sexual assault in 1998, when she was not yet five years old. R. 22. There is no reference whatsoever to any disabling condition that began when the Child was only nine days old, and records from that time period are to the contrary. Although the Child was born premature at 32 weeks, she was healthy and normal, with normal childhood afflictions such as ear and upper respitory infections. *See* R. 160-62, 169, 180.

that the evidence established the following functional limitations from the Child's impairments and reasonably related symptoms: no limitations in the domains of moving about and manipulating objects, caring for herself, and health and physical well-being; and less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others. R. 21. Based on these limitations, the ALJ found that the Child's impairments did not functionally equal any listed impairment. R. 23. Accordingly, the ALJ determined that the Child had not been under a disability at any time through the date of the decision. R. 23, Finding 7.

Plaintiff now asserts two errors. First, Plaintiff contends that the ALJ improperly disregarded the evidence from the Child's treating physician and others regarding her limitations. Second, Plaintiff contends that the ALJ did not properly discredit the Child's subjective complaints in finding her not disabled. For the reasons that follow, the Commissioner's decision is **REVERSED and REMANDED**.

## *II. STANDARD OF DISABILITY AND STANDARD OF REVIEW*

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The rules[3] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe"

---

[3] On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ.A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings.  20 C.F.R. § 416.924.  Whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a.  Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).  Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence.  *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).  The court may not reweigh the evidence or substitute its own judgment, even

if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

### *III. ANALYSIS*

**A.     Treating physician and other mental health providers' opinions**

The Plaintiff argues that the ALJ erred by rejecting the opinions of Dr. Deeb, the Child's treating psychiatrist, and Dr. Miller, a state agency physician, who opined that the Child had marked limitations in interacting and relating with others, social development/function, and personal/behavioral development. R. 220, 250. Although Plaintiff's analysis is somewhat vague about which domains she feels were wrongly decided, Plaintiff does not dispute the ALJ's findings of no limitation in the Child's domains of moving about and manipulating objects, caring for herself, or health and physical well-being. R. 22. The Commissioner contends that the ALJ's finding that the Child did not have a marked or extreme functional limitation in any of the six categories is supported by the evidence.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding

an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Plaintiff basically contends that the medical records support marked limitations in three domains: 1) acquiring and using information, 2) attending and completing tasks, and 3) interacting and relating with others. R. 220. In support of her argument, Plaintiff points to the opinion of Dr. Deeb, the Child's treating psychiatrist, who opined that the Child had marked limitations in social development/function and personal/behavioral development. R. 250. Dr. Miller, a state agency physician, opined on February 20, 2003, that the Child had no limitation or less than marked in five domains but had marked limitations in interacting and relating with others. R. 220.

*Acquiring and Using Information and Attending and Completing Tasks*

The Social Security Regulations specifically provide the following guidance on the domains of acquiring and using information and attending and completing tasks for school-aged children:

> When you are old enough to go to elementary and middle school, you should be able to learn to read, write, and do math, and discuss history and science. You will need to use these skills in academic situations to demonstrate what you have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions. You will need to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change). You should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing your own ideas, and by understanding and responding to the opinions of others. . . .
>
> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. §§ 416.926a(g)(2)(iv) & (h)(2)(iv).

For the domain of acquiring and using information, the ALJ relied on the reports of the two state agency psychologists who found no limitation and a less than marked limitation. R. 20. One of the state psychologists, Dr. Huisentruit believed Plaintiff had no limitation in the domain of Acquiring and Using Information as of October 7, 2002, and Dr. Miller found a less than marked limitation in this domain on February 20, 2003. R. 214, 220. The ALJ also relied on the report of Dr. Deeb, the Child's treating psychiatrist at the Act Corporation, who also found a less than marked limitations in this domain. R. 20, 249 (moderate problems in cognitive development/function). The

ALJ found: "The claimant is in regular classes and is only slightly behind grade level in reading and math. Her teacher reported that she had no problems with comprehension and understanding. She had no problems with single step instructions and only slight problems with multi-step instructions." R. 21.

In the domain of attending and completing tasks, the ALJ relied on the same state agency psychologists who found less than marked limitations in the domain of attending and completing tasks. R. 21. The ALJ rejected the opinion of the treating psychiatrist who found a marked limitation in attention and concentration, because, in the ALJ's opinion, this was not supported by the treatment notes. R. 21. The ALJ once again cited the reports from the Child's third-grade teacher who reported the Child was somewhat distractive and had problems focusing, but received grades of A, B, and C's and satisfactory marks in following directions/instructions and working independently. R. 21.

In addition to the medical sources, the ALJ may use evidence from education personnel, such as school teachers and counselors, to determine the Child's functional limitations in the six domains. § 416.913(d)(2). The reports of the Child's third *and* fourth grade teachers are highly relevant to her limitations in the domains of acquiring and using information and attending and completing tasks. Unfortunately, the ALJ only considered reports from the Child's third-grade teacher and did not consider the reports from her fourth-grade teacher or the fact that the Child had failed second and fourth grades, putting her two years behind the average child. Without discussing the Child's dismal fourth grade performance at all, the Commissioner dismissively suggests, "despite the fact that [the Child] was required to repeat the second and fourth grades, substantial evidence still supports the conclusion that Plaintiff's problems did not rise to the level of a marked or extreme limitation in the domain of Acquiring and Using Information." Doc. No. 19 at 12.

The Child had failed second grade during the time that she was shuttled back and forth (in different schools) between her biological mother's home and her foster home. R. 279. Plaintiff (the Child's cousin and guardian) said that she believed the Child's drug-abusing mother had used the Child to babysit her younger siblings. R. 364. The Child remained below average in a number of language categories on second grade testing, despite the fact that she was repeating the grade. R. 117.

The Child had some problems in third grade, as evinced by the reports of Constance Komatz, the Child's third grade teacher, who noted that she was below grade level in reading and slightly below grade level in math. R. 140-43. The teacher also stated that the Child was good about completing tasks, although sometimes it would take her longer to complete them and she completed 80% of her work on time. R. 140-43.

The Commissioner cites extensively to the Child's school reports from her *third* grade teacher, Ms. Komatz, who appeared to work very diligently (and commendably) with the Child to bring her performance up to passable grade level work. However, the Child changed schools upon starting fourth grade and she testified at the hearing that, by July 2004, she had failed fourth grade. R. 356, 364. Because of the amount of time that passed, the opinions of the state agency physicians (from October 2002 and February 2003 when she was in third grade) were of reduced relevancy, given the information from the Child's fourth grade teacher.

A November 2003 report from the Child's fourth grade teacher stated that she was "not putting forth her best effort and need[ed] to be focused in class. Currently is below grade level." R. 297. Plaintiff reported to the therapist in Dr. Deeb's office that the Child was continuing to do poorly in school and was failing. R. 342. She was often distracted and talkative in class. R. 342. The teacher noted that the Child "is borderline ADD per doctor." R. 297. The medical records reflect that on

February 3, 2004, the Child was having trouble concentrating in school and had been falling asleep in class; Plaintiff believed this was a result of her medication. R. 338. On March 25, 2004, Plaintiff reported that the Child continued to have problems with focusing and was "daydreaming." R. 335.

On May 24, 2004, the Child's fourth grade teacher, Ms. Wright, gave the Child the lowest ratings of "hardly ever" and only "sometimes" in ten of eleven categories of classroom functional performance tasks. R. 291. Although the Child's treating psychiatrist at ACT, Dr. Mota Castillo, noted that the Child was repeating fourth grade "because of the FCAT [Florida Comprehensive Achievement Test] but she is reading at the 7th grade level," the Child's FCAT results in the file prove otherwise. R. 294. Dr. Castillo was certainly mistaken, but it is clear he is not reporting his own findings; Dr. Mota Castillo was no authority on the Child's academic performance. The Child's FCAT scores put her in the National Percentile Rank of 58 on reading and 55 on math problem solving, or in Stanine 5. According to the report, a score in the range of 4-6 is considered an average score; the Child's score would be on par with national averages. R. 287. These scores were consistent with her scores in third grade, when the Child was promoted with Stanines of 4 and 6 in reading and math. R. 298, 300, 308. However, in third grade at a different school, the Child had received intensive tutoring and computer practice daily for seven months. R. 300, 317, 321. On the fourth grade FCAT exam, the Child performed extremely poorly on the FCAT Reading Performance section, scoring only one out of twelve possible points. R. 288. She received zero points for her one-sentence response: "She enjoy it because she always wanted to be very close to music and now shes a singer." R. 288 (mistakes in the original). The ALJ failed to cite any of the FCAT test scores, any

-10-

of the reports from the Child's fourth grade teacher[4] or even the crucial fact that she had failed the fourth grade. R. 21. He apparently relied on the Child's third-grade information, which was error in the face of the Child's testimony that she was had failed fourth grade.

### 2. *Interacting and Relating with Others*

According to the regulations, for the domain of interacting and relating with others, the ALJ is to examine how well the child can initiate and sustain emotional connections, co-operate, comply with rules, respond to criticism and respect the possessions of others. 20 C.F.R. § 416.926a(I). For children between six and twelve:

> When you enter school, you should be able to develop lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and to tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv).

The ALJ agreed with one state agency psychologist who found the Child to have a less than marked limitation in this domain, as supported by the progress notes, teacher's reports, and other reports. R. 21. The ALJ rejected the opinion of the other state agency psychologist and the treating psychiatrist, who found a marked limitation, because he found that the progress notes showed improvement in her behavior from earlier problems. The ALJ also cited teacher feedback about the Child's classroom behavior based on her third grade experience. R. 21 (citing Ex. 12E, R. 296-331). The ALJ's finding in this domain is not based on substantial evidence.

---

[4] According to the record as prepared by SSA, the fourth grade FCAT report and teacher report were exhibits received during the oral hearing. *See* R. 3 (Ex. 11E - School Records from Volusia County Schools dated 2/18/03-5/25/04.)

The Child clearly has a marked impairment in the domain of interacting and relating with others. The Child's treating psychiatrist, Dr. Deeb, opined that:

> Because of the abuse she endured and the negative domestic influences she witnessed as a young child, [the Child] has exhibited signs of social and emotional impairment. She is currently being treated for Reactive Attachment Disorder, Adjustment Disorder and PTSD. The school reports that [the Child] has difficulty interacting appropriately with her peers. . . . At home, [the Child] can be argumentative, aggressive, defiant, irritable and disruptive. [The Child] requires counseling services to help correct or change her maladaptive behaviors and thought pattern without ongoing treatment and intervention services, it is likely that [the Child] would decompensate and possibly require more restrictive treatment options.

R. 252. The Child was diagnosed by the treating psychiatrist with Reactive Attachment Disorder ("RAD"), which results in a child who participates in diffuse attachments, indiscriminate sociability, and excessive familiarity with strangers. American Psychiatric Association, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS at 116 (4th ed. 2000) (DSM-IV) (disinhibited RAD). "The essential feature of disinhibited Reactive Attachment Disorder is *markedly* disturbed and developmentally inappropriate social relatedness in most contexts that begins before age 5 years and is associated with grossly pathological care," with a pattern of diffuse attachments. DSM-IV at 116 (emphasis added).[5]

In 2001, when the Child first came to live with Plaintiff's family, after having been shuttled between foster care and her mother, one counselor wrote that the Child had no contact with her mother who "abuses substances and has AIDS; father unknown." R. 285. Dr. Deeb noted that she had crying outbursts and feared her mother would be killed. R. 199. A counselor in the office noted on December 2003 that the Child "struggles with maternal abandonment and abuse and sense of damaged

---

[5] A child with disinhibited RAD exhibits indiscriminate sociability or a lack of selectivity in the choice of attachment figures. DSM-IV at 116. The condition is associated with persistent disregard of the child's basic emotional needs for comfort, stimulation, and affection or repeated changes of primary caregiver that prevent formation of stable attachments. *Id.*

goods. Her distress emerges in ADHD [attention deficit hyperactivity disorder] like behavior." R. 342. Although the Child received intensive treatment for the sexual abuse, and eventually stopped acting out sexually [toward boys], she remained aggressive toward smaller peers. R. 229, 267, 269, 276-84, 344; *see also* R. 257 (teased at school; manipulates younger friends); 255 (mood swings, outbursts); 247 (low self-esteem; poor social skills); R. 234 (poor boundaries in presence of males); 225 (dressing seductively and using sexual gestures in fourth grade); 223 (behavior has declined at home and at school; attempted to steal four candy bars from a store); R. 116 (stole money from another student). The ALJ did not mention any of these incidents, except to say the Child's behavior had improved. The Commissioner concedes that the evidence is "admittedly conflicting," but that it is the ALJ's responsibility to weigh the evidence. The ALJ failed to base his decision on substantial evidence.

The ALJ's reliance on one state agency psychologist and rejection of the other was also erroneous. One state agency psychologist, Dr. Miller, opined that the Child had marked limitations in interacting and relating with others because she had a history of sexual abuse and neglect after being raped at five years old, she talked excessively and distracted others often, was caught stealing money and lip gloss from another student, was reportedly trying and testy, and was easily annoyed. R. 220. The other reviewing psychologist opined a "less than marked" limitation based solely on information from Fall 2002, and did not have the 2003 records that were before the other reviewing psychologist. R. 214.

Even the records from the Child's third-grade teacher, Ms. Komatz, do not support the ALJ's finding. Ms. Komatz opined in the category of "social/behavioral functioning" that the Child frequently had difficulty following the classroom rules, reacted to situations without considering the

consequences, and had difficulty showing respect for authority figures; and she had problems "sometimes" in the other four behavioral categories. R. 328. During the last quarter of her third-grade year, a conference was called by her teacher for behavior issues because the Child was "too concerned with others" and she should "take care of herself only." R. 327.

The ALJ's findings in the three domains of acquiring and using information, attending and completing tasks, and interacting and relating with others were not based on substantial evidence.

### B.     Credibility

Plaintiff contends that the ALJ erred by failing to state why the Child's testimony was not fully credible and what he found about her testimony that was not consistent with the medical evidence. The ALJ found that the Child's subjective complaints were considered credible only to the extent they were supported by the evidence of record as summarized in the text. R. 23, Finding 6.

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence); *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

As discussed thoroughly above, the ALJ failed to even mention the Child's testimony that she had failed fourth grade, or follow up on it. He also failed to discuss her lack of credibility or discredit any specific portion of her testimony or the Plaintiff's in the body of the decision. The ALJ will hear new testimony from Plaintiff and the Child on remand, and if he intends to discredit it, he will fully explain his reasoning for doing so.

### IV.    CONCLUSION

For the reasons set forth above, the ALJ's decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 27, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record